IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 20, 2015

## GREGORY HILL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 97595    Mary Beth Leibowitz, Judge**

**No. E2014-01686-CCA-R3-PC – Filed September 10, 2015**

The Petitioner, Gregory Hill, appeals from the Knox County Criminal Court's denial of his petition for post-conviction relief, wherein he challenged his jury convictions for two counts of aggravated assault and resulting sixteen-year sentence. In this appeal as of right, the Petitioner contends that he received the ineffective assistance of trial counsel in the following ways: (1) because trial counsel advised him to reject a favorable guilty plea with a six-year sentence and for which he could apply for probation, opining to the Petitioner that there was a strong chance of acquittal if he proceeded to trial; (2) because trial counsel advised him against testifying on his own behalf, and his decision to do so, based upon that advice, severely limited the evidence put forth to the jury supporting his claim of self-defense; and (3) because, following the trial court's ruling excluding the Petitioner's brother's testimony about a similar act of violence by one of the victims, trial counsel failed to make an offer of proof of said testimony. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and CAMILLE R. MCMULLEN, J., joined.

J. Liddell Kirk (at hearing and on appeal) and Albert Newman, Jr. (on petition), Knoxville, Tennessee, for the appellant, Gregory Hill.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Randall E. Nichols, District Attorney General; and Patricia A. Cristil, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
FACTUAL BACKGROUND

A Knox County grand jury indicted the Petitioner for four counts of aggravated assault against the two victims, Rodney Jones and Andrew Veals, following the Petitioner's involvement in a March 13, 2007 fight at Brownie's Bar. Respectively, counts 1 and 3 alleged that the Petitioner caused serious bodily injury to each victim, and counts 2 and 4 alleged that he assaulted each victim by use or display of a deadly weapon, to wit, a baseball bat. See Tenn. Code Ann. § 39-13-102(a). After a two-day trial in January 2008, a jury convicted the Petitioner of aggravated assault in counts 2, 3, and 4 as charged and of the lesser-included offense of felony reckless endangerment in count 1. The trial court merged the verdicts for counts 1 and 2 and counts 3 and 4, respectively, and ordered the Petitioner to serve two consecutive eight-year sentences in the Department of Correction. See State v. Gregory Lynn Hill, No. E2008-02521-CCA-R3-CD, 2009 WL 3711993 (Tenn. Crim. App. Nov. 6, 2009), perm. app. denied (Tenn. Apr. 14, 2010).

A detailed summary of the evidence establishing the aggravated assaults can be read in this court's opinion on direct appeal. See id. at *1-6. Briefly, the State and the Petitioner presented opposing theories to the jury regarding the impetus for the Petitioner's actions that March 13, 2007 evening at Brownie's. The State called both victims, two bar patrons who witnessed the fight, and the Knoxville Police Department officer who investigated the case to testify. The Petitioner did not contest that he was involved in the altercation, but he argued that he acted in self-defense. He called his girlfriend, Denise Swatzell, and his brother Martin Dwayne Hill, to testify on his behalf.

The evidence at trial, viewed in a light most favorable to the State, established that the victims approached a vehicle, while the Petitioner appeared to be burglarizing it. Although Mr. Veals admittedly raised his voice, the Petitioner, within a very short time, struck the unarmed Mr. Veals with a baseball bat, causing unconsciousness and a large "knot" on his head. Hill, 2009 WL 3711993, at *8. Further, the jury clearly did not credit Ms. Swatzell's testimony regarding the victims' pulling the Petitioner out of her vehicle then beating him. Id. Moreover, Mr. Jones testified that, upon seeing the Petitioner attack his friend, Mr. Veals, he grabbed the Petitioner, and a brawl ensued. Id. at *9. The jury clearly found that the Petitioner was the initial aggressor against Mr. Veals and that Mr. Jones rushed to friend's defense, thereby rejecting any claim of self-defense. Id. at *8-9.

On direct appeal, the Petitioner challenged the sufficiency of the convicting evidence; the denial of his motion for a mistrial because the State's witnesses violated the rule of sequestration; the refusal of the trial court to instruct the jury on defense of another; the trial court's exclusion of the Petitioner's brother's testimony as to the violent characteristics of one of the victims; and the imposition of his sentence, both in term length and its consecutive nature. Hill, 2009 WL 3711993, at *7. This court affirmed the Petitioner's convictions and

sentence, and our supreme court denied the Petitioner's application for permission to appeal. See generally id.

The Petitioner's pro se petition for post-conviction relief was filed with the court clerk on July 13, 2011. To this petition, the Petitioner attached a sworn affidavit, stating that he had placed the original copy of his post-conviction petition "in the institution-approved mailbox" on April 8, 2011, that he had affixed sufficient postage to the envelope containing the petition, that the envelope was properly addressed to the Knox County Criminal Court Clerk, and that said envelope had not been returned to him. He also attached a prison trust fund account withdrawal request, which showed that his account was charged a notary fee on April 8, 2011. When the Petitioner failed to receive any confirmation of filing, he contacted the court clerk, who informed him by letter dated June 1, 2011, that the original petition had not been received. This letter was also attached to the petition. The Petitioner then resent the petition on July 6, 2011, asserting therein that, based upon these facts, his petition should be considered as timely filed.

The post-conviction court entered a preliminary order appointing counsel, stating that the Petitioner presented a colorable claim "if he ha[d] filed in a timely manner." Post-conviction counsel was further ordered to "investigate the timel[i]ness of filing and provide additional evidence if any regarding the timely filing of this petition." An amended petition was filed, alleging that the Petitioner was denied the effective assistance of counsel at trial. No further mention was made of the timeliness of the petition, other than a broad statement that the "petition [was] not time barred."[1] As specific allegations of his ineffective claim, the Petitioner stated the following: (1) the Petitioner "believe[d]" that trial counsel failed to advise him of a plea offer, instead advising him "only . . . to go to trial, as [trial] counsel believed, this was an easy case to win on self-defense grounds or defense of [the] Petitioner's girlfriend"; (2) trial counsel's advice to the Petitioner not to testify at trial due to the

---

[1] Although neither the parties nor the post-conviction court questioned the timeliness of the post-conviction petition again, we are mindful that the statute of limitations for filing a post-conviction petition is jurisdictional. See Tenn. Code Ann. § 40-30-102(b) ("No court shall have jurisdiction to consider a petition filed after the expiration of the limitations period unless [certain statutory prerequisites are met]."). Our supreme court has held that "the one-year statutory period is an element of the right to file a post-conviction petition and that it is not an affirmative defense that must be asserted by the State." State v. Nix, 40 S.W.3d 459, 464 (Tenn. 2001). Thus, "it is incumbent upon a petitioner to include allegations of fact in the petition establishing either timely filing or tolling of the statutory period," and the "[f]ailure to include sufficient factual allegations of either compliance with the statute or [circumstances] requiring tolling will result in dismissal." Id. In this case, the Petitioner included in his amended petition allegations of fact that ostensibly established the timeliness of the petition, and because the issue was not addressed further in the post-conviction court, we will likewise address the petition on the merits. However, in the future, we encourage additional development of the issue.

Petitioner's prior criminal record was deficient, according to the Petitioner, because the trial court had previously ruled that trial "counsel could not present the issue of defense of another, and [trial] counsel also could not call [the Petitioner's] brother to testify about the many prior violent propensity's [sic] of the victim[,]" and therefore, "this advice not to testify, in effect, prevented [the Petitioner from] presenting his only viable defense" of self-defense; and (3) trial counsel failed to make "an offer of proof regarding the brother[']s testimony to preserve the issue for appeal."[2]

A hearing was held in the post-conviction court, at which only the Petitioner and trial counsel testified. According to the Petitioner, trial counsel told him that his case was "a slam dunk" based upon a theory of self-defense and, thus, there was no need to engage in plea bargain negotiations. Despite the allegation in the amended petition that trial counsel never conveyed any plea offer to the Petitioner, the Petitioner now admitted that trial counsel relayed an offer from the State of a six-year sentence and which allowed him to "apply for probation." According to the Petitioner, trial counsel said that he "was old drinkin' buddies" with the prosecutor and opined that there was a strong chance of acquittal at jury trial. Although the Petitioner considered this offer, and even went as far to speak with someone in the probation office about applying for probation in this case, he ultimately rejected the offer based upon trial counsel's advice to do so and proceeded to trial. The Petitioner testified that, but for this advice, he would have accepted the plea offer, rather than expose himself to the much longer sentence he ultimately received.

The Petitioner stated that he met with trial counsel, and they briefly discussed how the theory of self-defense would be presented to the jury. Trial counsel planned to call the Petitioner's brother and Ms. Swatzell to establish a claim of self-defense and advised the Petitioner not to testify based upon his prior criminal record.

The Petitioner testified that, after his brother, Martin Dwayne Hill, learned of the Petitioner's arrest, Mr. Hill informed the Petitioner of an incident where one of the victims had acted aggressively toward Mr. Hill at the same bar. Mr. Hill was called to testify at trial. After Mr. Hill testified about having a prior criminal conviction, he was prohibited from testifying about the similar incident at Brownie's Bar. The Petitioner claimed that he wanted this evidence in front of the jury to support his claim that the victims were the initial aggressors. According to the Petitioner, he did not remember having any further discussions

[2] Although the Petitioner's amended petition for post-conviction relief raised additional grounds of ineffective assistance and incorporated by reference the grounds raised in the pro se petition, his brief before this court is limited to these three allegations. Because the Petitioner has abandoned his other claims, we will limit our recount to the facts relevant to the issues of ineffective assistance presented.

-4-

with trial counsel about his decision to testify at trial, not even after Mr. Hill's testimony was excluded.

The Petitioner confirmed that Ms. Swatzell's testimony was correct according to his recollection of the trial. He also agreed that Ms. Swatzell had already testified that the victims were aggressive.

The Petitioner stated that he understood that if he did not testify at trial, then the jury would not know of his criminal record, but he claimed that he "would have rather testified and let the . . . jury know the whole truth than just one side." The Petitioner acknowledged that he had at least three prior convictions for aggravated assault and aggravated robbery and was sentenced as a Range II, multiple offender in this case. The Petitioner could not recall being asked any specific questions by the trial court regarding his decision not to testify.

Trial counsel was next to testify. Due to the passage of time, trial counsel could not recall whether the State ever made the Petitioner a plea offer of six years with an option to apply for probation, although acknowledging that such an offer would have been favorable to the Petitioner. However, in trial counsel's opinion, it was unlikely that such an offer was made given the Petitioner's "three or four violent felonies" that were used to establish his Range II classification. According to trial counsel, the Petitioner had another ongoing case at that time, and he believed that the Petitioner might be confusing the two. If someone were to speak with the probation office about a case, it would only be by referral from the trial court, according to trial counsel.

In accordance with his regular practice, trial counsel would have communicated any offer to the Petitioner, "[g]iven him the pluses and minuses of this case," and told him that the ultimate decision was Petitioner's alone to make. Trial counsel averred that he never made promises to clients and would not have referred to this case as a "slam dunk." According to trial counsel, this case was a "bar fight," which amounted to witness credibility and a determination by the jury of whom they believed. He further opined that the credibility of all of the witnesses, both from State and the defense, was a "little sketchy[.]"

Trial counsel was certain that the incident at Brownie's Bar involving the Petitioner's brother occurred after these offenses. Trial counsel recalled speaking with Mr. Hill, and Mr. Hill informing him that he had been threatened at this bar by the same victims.[3] Trial counsel

---

[3] It is unclear whether this incident involved both of the victims. The direct appeal opinion references only one victim, Mr. Veals. The testimony that Mr. Hill did give at trial before his testimony was excluded indicates that only Mr. Veals was present at the bar on this occasion.

opined that Mr. Hill's testimony would have been helpful as "corroboration" and "as having character for . . . not being peaceful." Trial counsel acknowledged that he did not make an offer of proof following the trial court's ruling prohibiting Mr. Hill from testifying about the incident.

Trial counsel also recalled interviewing Ms. Swatzell and presenting her as a trial witness and believed that her trial testimony supported the theory of self-defense. Trial counsel confirmed that he advised the Petitioner against testifying, believing it to be imprudent because the Petitioner had been convicted of violent crimes in the past, including an aggravated assault "just like he was charged with in this case." However, trial counsel could not remember if the court ever ruled "as to what convictions would come in if [the Petitioner] decided to testify[.]" In trial counsel's opinion, the theory of self-defense was adequately presented to the jury through Ms. Swatzell's testimony alone. Trial counsel recalled the trial court specifically asking the Petitioner questions about his decision not to testify.

Thereafter, the post-conviction court denied relief, concluding that the Petitioner had failed to establish his claim of ineffective assistance of counsel. This timely appeal followed.

ANALYSIS

On appeal to this court, the Petitioner contends that trial counsel failed to provide the effective assistance of counsel at trial guaranteed to him by the United States and Tennessee constitutions. Specifically, he submits that trial counsel was ineffective in the following ways: (1) trial counsel advised him to reject a favorable guilty plea with a six-year sentence and for which he could apply for probation, opining to the Petitioner that there was a strong chance of acquittal if he proceeded to trial; (2) trial counsel advised him against testifying on his own behalf, and his decision to do so, based upon that advice, severely limited the evidence put forth to the jury supporting his claim of self-defense; and (3) following the trial court's ruling excluding Mr. Hill's testimony regarding a similar attack by one of the victims, trial counsel failed to make an offer of proof of that testimony. We will address each issue in turn.

Petitions for post-conviction relief are governed by the Post-Conviction Procedure Act. Tenn. Code Ann. §§ 40-30-101 to -122. To obtain relief, the petitioner must show that his conviction or sentence is void or voidable because of the abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The petitioner must prove his factual allegations supporting the grounds for relief contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(2)(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn.

-6-

2009). Evidence is clear and convincing when there is no substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. See State v. Nichols, 90 S.W.3d 576, 586 (Tenn. 2002) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)); see also Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). The petitioner has the burden of establishing that the evidence preponderates against the post-conviction court's findings. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). This court may not re-weigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Nichols, 90 S.W.3d at 586. Furthermore, the credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

Ineffective assistance of counsel claims are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001). Thus, the post-conviction's findings of fact underlying a claim of ineffective assistance of counsel are reviewed under a de novo standard, accompanied with a presumption that the findings are correct unless the preponderance of the evidence is otherwise. Fields, 40 S.W.3d at 458 (citing Tenn. R. App. P. 13(d)). The post-conviction court's conclusions of law are reviewed under a de novo standard with no presumption of correctness. Id.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance was deficient is not enough; rather, the petitioner must also show that but for counsel's deficient performance, "the result of the proceeding would have been different." Strickland, 466 U .S. at 694. The Strickland standard has also been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley, 960 S.W.2d at 580. The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability

that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697.

Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland, 466 U.S. at 687 (1984); Burns, 6 S.W.3d at 461; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

First, the Petitioner submits that trial counsel was ineffective for advising him to reject a plea bargain offer which would have resulted in a total effective sentence of six years and allowed him to apply for probation. Trial counsel could not recall such an offer ever being made by the State, but he admitted that if such an offer had been made, then it would have been favorable to the Petitioner. In trial counsel's opinion, however, it was unlikely that such an offer was ever made considering the Petitioner's prior criminal record. Trial counsel also opined that the Petitioner was likely confusing this case with another case of his that was pending at the same time and noted that the Petitioner would have only gone to the probation office for this case by a referral from the trial court. Furthermore, trial counsel stated that, pursuant to his regular practice, he would have conveyed the offer to the Petitioner, discussed the advantages and disadvantages of proceeding to trial, and allowed the Petitioner to make his own decision. Contrary to the Petitioner's testimony, trial counsel stated that he never made promises to a client and did not tell the Petitioner that his case was a "slam dunk." The post-conviction court clearly accredited trial counsel's credibility in this regard, and we will not disturb that determination on appeal. Deficient performance by trial counsel on this ground has not been established.

As his next ground for relief, the Petitioner contends that trial counsel was ineffective for advising him not to testify in his own defense. He continues, "Though some prior criminal conduct may have come into evidence to impeach the Petitioner's testimony, it was still necessary for the Petitioner to tell his side of the story in order to properly present a

credible claim of self-defense to the jury." The Petitioner notes that, while his prior criminal record was "a legitimate concern in evaluating the question of whether [he] should testify, use of the Petitioner's prior aggravated assault convictions could have been challenged [by trial counsel] as marginally probative of credibility and unduly prejudicial in a case where he was charged with the offense of aggravated assault."

The true nature and extent of the Petitioner's criminal record is unclear because the presentence report is not included in the direct appeal record. However, the certified judgments used to establish the Petitioner's Range II, multiple offender classification are: one armed robbery conviction, two aggravated robbery convictions, and one aggravated assault conviction. All of these convictions are likely within the ten-year time limit of Rule 609,[4] although that too is not entirely clear from the record. Moreover, at the sentencing hearing, the trial court found that the Petitioner had additional criminal convictions in addition to those necessary to establish his Range II classification, stating, "[H]e has additional convictions. A lot of them. Over and above the appropriate range. Mostly misdemeanors, but some of the[m] involving assaults and alcohol abuse, which [was] part of the problem here. And also involving possession with the intent to go armed. Driving under the influence." Nonetheless, there is no indication, from the record before us, that the State ever filed a notice of intent to use such evidence at trial or that the trial court ever ruled on the Petitioner's motion to suppress "all bad character evidence[,]" including "impeachment evidence of conviction of crimes more than [ten] years" old. It does not appear, as such, that the trial court ever made any determination about whether the probative value of any of the Petitioner's convictions on credibility outweighed their unfair prejudicial effect on the substantive issues.[5]

---

[4] Rule 609(b) provides the following time limit for use of prior convictions:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed between the date of release from confinement and commencement of the action or prosecution; if the witness was not confined, the ten-year period is measured from the date of conviction rather than release. Evidence of a conviction not qualifying under the preceding sentence is admissible if the proponent gives to the adverse party sufficient advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence and the court determines in the interests of justice that the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect.

[5] See Tennessee Rule of Evidence 609(a)(3):

> If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused.

Regardless of the admissibility of the Petitioner's prior convictions pursuant to Rule 609, the possibility existed that evidence of the prior convictions may have been admitted into evidence had the Petitioner chosen to testify at trial. See Michael Braxton v. State, No. M2006-01894-CCA-R3-PC, 2007 WL 1988141, at *4 (Tenn. Crim. App. July 10, 2007). In State v. Kendricks, 947 S.W.2d 875, 883 (Tenn. Crim. App. 1996), this court held that "irrespective of admissibility under Rule 609 [of Tennessee Rules of Evidence], a conviction may be used to contradict a witness who 'opens the door' and testifies on direct examination that he or she has never been convicted of a crime, or to counter some other facet of direct testimony." In addition, the Petitioner's convictions may have been used as substantive evidence under Rule 404(b) to rebut his claim of self-defense or to show his intent. See Braxton, 2007 WL 1988141, at *4 (citing Tenn. R. Evid. 404(b)). Therefore, trial counsel's advice that the Petitioner should consider the possibility that his prior convictions could be used against him if he were to testify was not without legal merit. We agree with the post-conviction court's findings, after reviewing the Momon[6] hearing, that the Petitioner affirmatively stated that he had discussed his decision about whether to testify with trial counsel; that he knew that if he did take the stand and testify, then his prior criminal record might be used against him; and that he alone made his decision not to testify. We conclude that trial counsel properly advised the Petitioner of his right to testify and merely informed him of a possible drawback of his potential testimony.

Moreover, trial counsel testified that Ms. Swatzell's testimony sufficiently raised the claim of self-defense and that, based upon her testimony alone, an instruction on self-defense was given to the jury. According to trial counsel, although he hoped to use Mr. Hill's testimony to further support a theory of self-defense, he did not consider the exclusion of Mr. Hill's testimony as a basis for reconsidering whether the Petitioner should testify on his own behalf. Trial counsel's decision in this regard was a strategic one, which will not be second-guess on appeal. The reality of the Petitioner's prior criminal record being introduced into evidence remained unchanged. Thus, the Petitioner has failed to show that trial counsel was deficient and is not entitled to relief on this issue.

Finally, the Petitioner argues that trial counsel was ineffective for failing to make an offer of proof regarding the proposed testimony of Martin Hill after the trial court's ruling excluding the testimony. At trial, the Petitioner's brother, Martin Dwayne Hill, testified that he had a prior conviction for aggravated burglary. He also attempted to testify to an incident at Brownie's Bar in December 2007 involving Mr. Veals' propensity for violence. Apparently, the Petitioner planned to offer this proof of the victim's character trait pursuant

---

[6] Referring to the prophylactic procedure outlined in Momon v. State, 18 S.W.3d 152 (Tenn. 1999), which is designed to insure that a defendant's waiver of his right to testify is voluntary, knowing, and intelligent.

to Tennessee Rule of Evidence 404(a)(2). However, following an objection by the prosecution, the trial court excluded the propensity evidence which occurred after the case at hand, and Mr. Hill was excused from the stand. Defense counsel made no attempt, thereafter, to obtain an offer of proof regarding Mr. Hill's testimony. The Petitioner challenged the trial court's ruling excluding the testimony on direct appeal to this court, but the issue was deemed waived due to trial counsel's failure to present any proof to the trial court regarding the specific instance of conduct. See Hill, 2009 WL 3711993, at *11.

In his brief in this post-conviction appeal, the Petitioner essentially concedes that he has again waived appellate review by not calling Mr. Hill to testify at the post-conviction hearing. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). A petitioner must generally elicit favorable testimony from a witness at the evidentiary hearing, as a post-conviction court may not speculate "on the question of what a witness's testimony might have been if introduced" at trial. Id. As such, the Petitioner cannot meet his burden of demonstrating prejudice in this regard.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, we conclude that the post-conviction court did not err by denying the petition for post-conviction relief. The judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-11-